**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SANGHARAJ DESAI, <br><br> Plaintiff, <br><br> v. <br><br> U.S. CITIZENSHIP AND IMMIGRATION SERVICES, *et al.*, <br><br> Defendants. | Civil Action No. 20-1005 (CKK) |

**MEMORANDUM OPINION**
(March 22, 2021)

Plaintiff Sangharaj Desai brings this action against the U.S. Citizenship & Immigration Services ("USCIS"), as well as officials of USCIS, the U.S. Department of Justice ("DOJ"), and the Federal Bureau of Investigation ("FBI") (together, "Defendants" or the "Government"), claiming that the Government's delay in adjudicating his petition for an immigrant investor visa is unreasonable. Plaintiff seeks an order under the Administrative Procedure Act ("APA") and the Mandamus Act compelling the Government to reach a decision on his visa petition within 14 days.

Before the Court is the Government's [13] Motion to Dismiss and Plaintiff's [14] Cross-Motion for Summary Judgment. Upon review of the pleadings,[1] the relevant legal authority, and the record as a whole, the Court finds that Plaintiff's Amended Complaint fails to allege a plausible

---

[1] The Court's consideration has focused on the following: Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss ("Defs.' Mot."), ECF No. 13-1; Plaintiff's Cross-Motion for Summary Judgment and Opposition to Defendants' Motion to Dismiss ("Pl.'s Cross-Mot. & Opp'n"), ECF Nos. 14 & 15; Reply in Support of Defendants' Motion to Dismiss and Opposition to Plaintiff's Motion for Summary Judgment ("Defs.' Opp'n & Reply"), ECF Nos. 16 & 17; Reply in Support of Plaintiff's Cross-Motion for Summary Judgment ("Pl.'s Reply"), ECF No. 18. The Court has also reviewed Defendants' Notice of Supplemental Authority, *see* ECF No. 19, and Plaintiff's Reply thereto, *see* ECF No. 21.

claim of unreasonable delay. Accordingly, the Court shall grant the Government's Motion to Dismiss. Because the Court concludes that dismissal of the Amended Complaint is appropriate, it does not reach the question of summary judgment.

## I.     BACKGROUND

Plaintiff Sangharaj Desai is an Indian national who filed with USCIS a petition for a visa under the "EB-5" Immigrant Investor Program on May 7, 2019. Am. Compl. ¶ 30, ECF No. 12. Plaintiff is awaiting USCIS's adjudication of his petition. Because some context about the EB-5 program is helpful to understand Plaintiff's claims, the Court shall first provide background information about that program before discussing the facts pertinent to resolving the pending motions.[2]

### A.  The EB-5 Immigrant Investor Program

The Immigration and Nationality Act ("INA"), U.S.C. §§ 1101 *et seq.*, authorizes the issuance of so-called "EB-5" visas to immigrants who have "invested" capital in a "new commercial enterprise" that "will benefit the United States economy and create full-time employment" for ten citizens or non-citizens with work authorization. 8 U.S.C. § 1153(b)(5)(A)(i)-(ii). At the time relevant to Plaintiff's Complaint, the applicant must have also made a direct investment of at least $1,000,000 *or* an investment of $500,000 into a "targeted

---

[2] As discussed *infra* Section II, in ruling on Rule 12(b)(6) motion to dismiss, the Court may consider documents upon which the Complaint relies and documents in the public record of which the court may take judicial notice. Here, Plaintiff's Amended Complaint discusses in detail the EB-5 investor program and relies on, for example, USCIS regulations, policy statements, and website pages. *See* Am. Compl. ¶¶ 26–66. Accordingly, the Court may take judicial notice of these materials, as well as the material cited in the Court's discussion here which includes publicly available information about the program without converting the Government's motion into one for summary judgment.

employment area." § 1153(b)(5)(C)(ii).[3] A "targeted employment area" is a "rural area or an area which has experienced high unemployment." § 1153(b)(5)(B)(ii); *see also* 8 C.F.R. § 204.6(e) ("Targeted employment area means an area that, at the time of investment, is a rural area or is designated as an area that has experienced unemployment of at least 150 percent of the national average rate.").

USCIS allows certain "economic units" to apply for status as a "targeted employment area" and designation as a "Regional Center" through the Immigrant Investor Pilot Program. *See* Departments of Commerce, Justice, and State, the Judiciary and Related Agencies Appropriations Act of 1993, Pub. L. No. 102-395, § 610(a), 106 Stat. 1828, 1874 (Oct. 6, 1992); 8 C.F.R. § 204.6(m). To become a "Regional Center," an economic unit must promote economic growth through "increased export sales, improved regional productivity, job creation, or increased domestic capital investment." 8 C.F.R. § 204.6(m)(3)(i). A foreign investor's investment in an approved Regional Center satisfies the EB-5 "employment-creation" requirement by creating jobs indirectly. *Id.* §§ 204.6(j)(4)(iii), 204.6(m)(7)(ii); *see also* Interim Rule, Immigrant Investor Pilot Program, 58 Fed. Reg. 44,606, 44,607 (Aug. 24, 1993).

To become a lawful permanent resident under the EB-5 Program, an applicant must first file with USCIS a petition for classification as an EB-5 investor, using a "Form I-526." *See* 8 C.F.R. § 204.6(a), (c). Once the Form I-526 is approved by USCIS, the applicant must still wait for a visa to become available, which, the D.C. Circuit has observed, "may take years," *Mirror*

---

[3] Effective November 21, 2019, the threshold amounts required for EB-5 investments were increased from $1,000,000 to $1,800,000 generally and from $500,000 to $900,000 for targeted employment areas. *See* Final Rule, *EB-5 Immigrant Investor Program Modernization*, 84 Fed. Reg. 35,750, 35,808 (Jul. 24, 2019). The Government notes that "[b]ecause [Plaintiff] filed his petition before the requisite amounts were increased, he may still qualify under the old amounts." *See* Defs.' Mot. at 2 n.1.

3

*Lake Village, LLC v. Wolf*, 971 F.3d 373, 375 (D.C. Cir. 2020); *see also Nohria v. Renaud*, No. 20-cv-2086-BAH, 2021 WL 950511, at *2 (D.D.C. Mar. 14, 2021) ("Successful adjudication and approval of an I-526 petition makes a petitioner *eligible* for a visa, but does not automatically provide a visa."(emphasis added)).

Because the INA limits the total number of visas available each fiscal year and allots percentages of visas by country and type of visa,[4] when the demand for visas is higher than the supply, visa petitions are queued based on their "priority date"—typically the date the visa petition was filed with USCIS. 8 U.S.C. § 1153(e); 8 C.F.R. § 204.6(d). A petitioner then becomes eligible for a visa when the "priority date" is listed for the applicant's country and visa category in the State Department's monthly Visa Bulletin. *See* Am. Compl. ¶¶ 23–34.

USCIS historically processed I-526 Forms according to a "first in, first-out" method. *See* Am. Compl. ¶ 26; Defs.' Mot. at 5.[5] However, effective March 2020, USCIS adopted a new policy to prioritize petitions from nationals of countries "where visas are immediately available, or soon available" based on the per-country limits. *See* Am. Compl. ¶ 26; Defs.' Mot. at 5–6. As applied to the EB-5 investor program, this process allows the USCIS Immigrant Investor Program Office ("IPO")—which handles investor program applications—to "designate particular petitions to prioritize for processing by factoring in the availability of EB-5 immigrant visas and determining whether a visa is available or soon to be available to a petitioner." *Nohria*, 2021 WL 950511, at *3. The IPO makes this determination by taking into account the petitioner's country of birth and

---

[4] The INA limits the total number of immigrant visas per year, the total number of employment-based visas granted to individuals from a given country, and also limits EB-5 visas to 7.1% of all employment-based visas granted. 8 U.S.C. § 1151 (a)(2), (b)(5)(A), (d).

[5] *See also* U.S. Citizenship & Immigration Services, USCIS Adjusts Process for Managing EB-5 Visa Petition Inventory ("EB-5 Processing Announcement") (Jan. 29, 2020), https://www.uscis.gov/news/news-releases/uscis-adjusts-process-for-managing-eb-5-visa-petition-inventory (last accessed Mar. 22, 2021).

the availability of visas for that country (as set out in the Visa Bulletin). *Id.* Once a petition is designated for priority, it goes through the "first-in, first-out" process among other similarly-designated visas. *Id*. Plaintiff also provides information in his Amended Complaint about the "mandatory criminal and national security background checks" conducted by the FBI of any individual who submits a visa petition to USCIS. *See* Am. Compl. ¶¶ 39–44. According to Plaintiff, as of 2009 (more than 10 years ago), the FBI indicated that most background check requests associated with visa petitions were completed within, at most, three months. *Id.* ¶ 44. Once a Form I-526 is approved by USCIS, it is sent to the National Visa Center for processing.[6]

## B. Factual Background

Plaintiff filed a Form I-526 with USCIS on May 7, 2019, based on his investment of $500,000 in a regional center. Am. Compl. ¶ 30, Ex. E at 5–6. As of the date of his Amended Complaint, Plaintiff had been waiting more than one year for a decision by USCIS on his I-526 petition. *Id.* ¶ 35. Plaintiff contends that under the "Visa Availability" approach adopted by USCIS, he should be given priority processing because his assigned "priority date" is "current" based on the State Department Visa Bulletin. *Id.* ¶¶ 67, 76.

Plaintiff's four-count complaint includes claims under the APA and Mandamus Act. Plaintiff claims that USCIS's delay in adjudicating his I-526 petition and the FBI's delay in completing the requisite background check are "unreasonable" under the APA. *See* Am. Compl. ¶¶ 57–69; 81–91 (Counts I & III). He also seeks mandamus relief against officials of USCIS, DOJ,

---

[6] *See* U.S. Department of State, Immigrant Visa Process, https://travel.state.gov/content/travel/en/us-visas/immigrate/the-immigrant-visa-process/step-1-submit-a-petition.html (last visited Mar. 22, 2021); U.S. Citizenship & Immigration Services, Questions And Answers ("Questions and Answers") (Sept. 17, 2020), https://www.uscis.gov/working-united-states/permanent-workers/employment-based-immigration-fifth-preference-eb-5/questions-and-answers-eb-5-immigrant-investor-program-visa-availability-approach (last accessed Mar. 22, 2021).

5

and FBI to compel them to "perform their dut[ies]" related to the adjudication of his petition and completion of the associated background check. *Id.* ¶¶ 70–80; 92–101 (Counts II & IV). The Government moved to dismiss Plaintiff's Amended Complaint, arguing that it fails to state a claim of "unreasonable" delay. *See* Defs.' Mot. at 1. Plaintiff cross-moved for summary judgment, contending that the "undisputed facts" demonstrate that he is entitled to judgment as a matter of law that the Government's delay in adjudicating his visa petition is "unreasonable." *See* Pl.'s Cross-Mot. & Opp'n at 1.

## II.    LEGAL STANDARD

Pursuant to Rule 12(b)(6), a party may move to dismiss a complaint on grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint is not sufficient if it "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "In evaluating a motion to dismiss, the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Nat'l Postal Prof'l Nurses v. U.S. Postal Serv.*, 461 F. Supp. 2d 24, 27 (D.D.C. 2006).

When considering a Rule 12(b)(6) motion, courts may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint" or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Ward*

6

*v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (internal quotation marks omitted) (quoting *Gustave–Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002); *Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009)). The court may also consider documents in the public record of which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

### III.  DISCUSSION

The Government argues that Plaintiff's Amended Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because it fails state a plausible claim that the alleged delay in adjudicating Plaintiff's I-526 petition constitutes an "unreasonable" delay actionable under the APA or Mandamus Act. Defs.' Mot. at 1, 8–9. Plaintiff opposes the Government's motion and argues that the "undisputed facts" demonstrate that his I-526 petition is "of a type that warrants attention now." Pl.'s Cross-Mot & Opp'n at 1. The Court finds that Plaintiff's Amended Complaint fails to allege a plausible claim of unreasonable delay, and therefore shall grant the Government's Motion and dismiss the Amended Complaint. Because dismissal of the Complaint is appropriate, the Court does reach the question of summary judgment.

#### A.  APA Claims

The APA requires that agencies "within a reasonable time . . . shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). If agencies fail to do so, courts may "compel agency action unlawfully withheld or unreasonably delayed." *Id.* § 706(1) "There is 'no per se rule as to how long is too long' to wait for agency action, but a reasonable time for agency action is typically counted in weeks or months, not years." *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 419 (D.C. Cir. 2004) (citation omitted) (quoting *In re Int'l Chem. Workers Union*, 958 F.2d 1144, 1149 (D.C. Cir. 1992)).

7

To determine whether Plaintiff has sufficiently alleged that agency action has been "unreasonably delayed," the Court must apply the six factors laid out by the D.C. Circuit in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*"):

> (1) the time agencies take to make decisions must be governed by a rule of reason;
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
>
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 549 (D.C. Cir. 1999) (quoting *TRAC*, 750 F.2d at 80) (internal quotation marks omitted). Whether a delay is unreasonable "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003). Moreover, the D.C. Circuit has noted the "importance of competing priorities in assessing the reasonableness of an administrative delay." *Id.* (internal citations and quotation marks omitted). It therefore has refused to grant relief where "a judicial order putting [the petitioner] at

the head of the queue [would] simply move[ ] all others back one space and produce[ ] no net gain." *In re Barr Laboratories, Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991).

As a threshold issue, the Court must consider whether it is appropriate to apply the *TRAC* factors at this procedural juncture. The D.C. Circuit has explained that a "[r]esolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court." *Mashpee*, 336 F.3d at 1100. Citing this reasoning, some courts in this jurisdiction have declined to evaluate claims of "unreasonable delay" before discovery, noting that doing so would be "premature" because the inquiry is "fact intensive." *Thomas v. Pompeo*, 438 F. Supp. 3d 35, 44 (D.D.C. 2020); *see also Addala v. Renaud*, No. 20-cv-2460-RCL, 2021 WL 244951, at *3 (D.D.C. Jan. 25, 2021) (declining to "consider whether the agency has unreasonably delayed adjudication of the plaintiffs' visa applications until it has a sufficient record to answer that question").

Other courts, however, have granted motions to dismiss based on their application of the *TRAC* factors to the factual allegations of a complaint asserting a claim of "unreasonable delay." *See, e.g. Palakuru v. Renaud*, No. 20-cv-02065 (TNM), 2021 WL 674162, at *3–6 (D.D.C. Feb. 22, 2021) (noting that it is "appropriate" to consider whether EB-5 petitioner's complaint "meets Rule 12(b)(6) pleading standards" by applying *TRAC* factors); *Sarlak v. Pompeo*, No. 20-cv-35-BAH, 2020 WL 3082018, at *5 (D.D.C. June 10, 2020) (acknowledging the plaintiffs' argument that applying the *TRAC* factors at the motion-to-dismiss stage was premature, but deciding that "[n]evertheless, in cases like this one involving claims of unreasonably delayed waiver determinations, the *TRAC* factors have been generally employed at the motion to dismiss stage to determine whether a plaintiff's complaint has alleged facts sufficient to state a plausible claim for unreasonable administrative delay"(internal citations and quotation marks omitted)); *see*

*also Ghadami v. DHS*, No. 19-cv-00397-ABJ, 2020 WL 1308376, at *7 n.6 (D.D.C. Mar. 19, 2020) (acknowledging the split in authority but deciding that "it is appropriate for the Court to apply the factors at th[e] [motion-to-dismiss] stage"); *Didban v. Pompeo*, 435 F. Supp. 3d 168, 175–77 (D.D.C. 2020) (applying *TRAC* factors to resolve the government's motion to dismiss); *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 93–96 (D.D.C. 2020) (same); *Mirbaha v. Pompeo*, No. 20-cv-299 (TJK), 2021 WL 184393, at *4 (D.D.C. Jan. 19, 2021) (same). As with these cases, the Court finds that the record here contains "enough facts to evaluate the *TRAC* factors now." *Sarlak*, 2020 WL 3082018, at *5. Plaintiff appears to agree. *See* Pl.'s Cross-Mot. & Opp'n at 7. Doing so, the Court finds that Plaintiff has failed to state a claim for "unreasonable delay" under the APA.[7]

1. **First *TRAC* Factor**

The first *TRAC* factor—the time agencies take to make decisions must be governed by a "rule of reason"—weighs in favor of the Government. The D.C. Circuit has explained that this factor is the "most important." *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008). It requires the Court to identify whether there is "any rhyme or reason" for the Government's delay—in other words, "whether the agency's response time . . . is governed by an identifiable rationale." *Ctr. for Sci. in the Pub. Interest v. FDA*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014).

---

[7] Consistent with other courts in this jurisdiction, the Court shall grant the Government's motion to waive compliance with Local Civil Rule 7(n)'s requirement that the agency submit an index of the administrative record. *See* Defs.' Mem. at 7 n.5; *see also Nat'l Law Ctr. on Homelessness & Poverty v. U.S. Dep't of Veterans Affairs*, 842 F. Supp. 2d 127, 130 (D.D.C. 2012) (explaining that "there is no administrative record for a federal court to review" in cases of alleged agency inaction); *Addala*, 2021 WL 244951, at *3 ("grant[ing] the agency relief from the requirements of Local Civil Rule 7(n)" because "there is no administrative record to produce" in a case of agency inaction); *Palakuru*, 2021 WL 674162, at *3 n.6 (same). Plaintiff agrees that "submission of an administrative record is unnecessary" to decide the pending motions. Pl.'s Cross-Mot. & Opp'n at 7.

Here, the Government argues that its "visa availability approach" provides an identifiable rationale to guide its adjudication of visa petitions; it "prioritizes petitions for individuals from countries where visas are currently available" and "allows qualified EB-5 petitioners from traditionally underrepresented countries to have petitions approved in a more timely fashion." Defs.' Mot. at 11. This explanation provides an "identifiable rationale" for the Government's approach to processing I-526 petitions. Two other courts in this jurisdiction have recently so agreed. *See Palakuru*, 2021 WL 674162, at *3 ("The Court finds that the Government's process for adjudicating I-526 petitions is governed by a rule of reason."); *Nohria*, 2021 WL 950511, at *6 n.5 ("The agency's process is clearly governed by a solid rule of reason—the visa availability approach—meeting the first factor[.]").

Plaintiff argues that the Government has not applied its stated "rule of reason" to *his* petition, noting that his "priority date" for visa eligibility is "current" and that he is also entitled to priority status because he invested in a "Regional Center." *See* Pl.'s Cross-Mot. & Opp'n at 13, 19. Plaintiff's arguments, however, fail to account for other petitioners in precisely the *same* situation who may have filed their petitions earlier.[8] *See, e.g.*, *Palakuru*, 2021 WL 674162 at *3. And even when "Regional Center" petitions receive priority status, they still go through a "first in, first out" process. *See supra* Section I(A). Other courts have recognized that a "first in, first out" method supplies an adequate rule of reason to tip this "most important" *TRAC* factor in the Government's favor. *See, e.g. Nibber v. U.S. Citizenship & Immigr. Servs.*, 20-3207 (BAH), 2020 WL 7360215, at *5 (D.D.C. Dec. 15, 2020); *Uranga v. U.S. Citizenship & Immigr. Servs.*, No. 20-cv-0521 (ABJ), 2020 WL 5763633, at *11 (D.D.C. Sept. 28, 2020); *Muvvala v. Wolf*, 20-cv-02323

---

[8] Plaintiff's discussion about the number of hours it purportedly takes the Government to adjudicate a single visa petition suffers from the same flaw; it fails to account for the *queue* of other similarly situated petitions. *See* Pl.'s Cross-Mot. & Opp'n at 15.

(CJN), 2020 WL 5748104, at *3 (D.D.C. Sept. 25, 2020).  The Government has supplied a rule of reason for the timing of its adjudicative process of I-526 petitions.

### 2. Second *TRAC* Factor

The second *TRAC* factor requires courts to consider whether a "statutory timeline" supplies content for the "rule of reason" inquiry.  *TRAC*, 750 F.2d at 80.  Plaintiff argues that the INA sets a "timeframe" by which the Government must adjudicate petitions.  Pl.'s Cross-Mot. & Opp'n at 16–18.  Specifically, Plaintiff points to 8 U.S.C. § 1571(b), which states: "It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application."  8 U.S.C. § 1571(b); *see* Pl.'s Cross-Mot. & Opp'n at 17.  The Government argues that this "sense of Congress" language is "legislative dicta" that is not "binding" on the agency.  Defs.' Mot. at 9.

The D.C. Circuit has recognized that "a sense of Congress resolution is not law." *Emergency Coal. to Defend Educ. Travel v. U.S. Dep't of the Treasury*, 545 F.3d 4, 14 n.6 (D.C. Cir. 2008); *see also Nat'l Ass'n of Mfrs. v. SEC*, 800 F.3d 518, 529 n.26 (D.C. Cir. 2015) (noting the First, Third, and Ninth Circuits, have treated similar language as "precatory" and "a statement of opinion," rather than "a statement of fact").  Citing this precedent, some courts in this jurisdiction have treated § 1571(b) as "nonbinding," prompting them to weigh this factor in the Government's favor, even when the Government's time for adjudicating a visa petition has surpassed 180 days.  *See, e.g.*, *Palakuru*, 2021 WL 674162, at *4.  But the question posed by *TRAC* is not whether Congress has established a "binding" timetable, but whether it has provided an "indication of the speed with which it expects the agency to proceed." *Uranga*, 2020 WL 5763633, at *12 (citing *TRAC*, 750 F.2d at 80).  Other courts, accordingly, have found that § 1571(b) is "certainly [an] indication of the speed with which it expects the agency to proceed," and weighed

this factor in favor of a petitioner when the agency's processing time exceeds 180 days. *See, e.g.*, *id.* (citing *A.C.C.S. v. Nielsen*, CV 18-10759-DMG, 2019 WL 7841860, at *5 (C.D. Cal. Sept. 17, 2019); *Khan v. Johnson,* 65 F. Supp. 3d 918, 930 (C.D. Cal. 2014); *Islam v. Heinauer*, 32 F. Supp. 3d 1063, 1073 (N.D. Cal. 2014)). This Court tends to agree that this factor tips in Plaintiff's favor, accounting for Congress' stated goal of processing visa petitions within six months compared to Plaintiff's waiting time of more than one year.[9]

This finding, however, does not automatically compel a finding that Plaintiff has stated a claim for unreasonable delay to survive a Rule 12(b)(6) motion. In *Uranga*, for example, the court concluded that plaintiff had failed to state a claim for unreasonable delay in the government's adjudication of a visa petition even though the court weighed the second *TRAC* factor against the government. *Uranga*, 2020 WL 5763633, at *12; *see also Palakuru*, 2021 WL 674162, at *4 ("Even if the Court was to conclude that § 1571(b) provides some 'indication of the speed with which [Congress] expects the agency to proceed,' *TRAC*, 750 F.2d at 80, though, the Court's rule-of-reason analysis would remain unchanged.").

   3.  **Fourth *TRAC* Factor**

The fourth *TRAC* factor weighs in the Government's favor. This factor requires an assessment of "the effect of expediting delayed action on agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80. In other words, the Court considers whether expediting

---

[9] The Government correctly notes that in other cases challenging delays in immigration-related agency actions, courts "turn to case law as a guide" to determine what is "unreasonable." Defs.' Mot. at 10–11; *see Sarlak*, 2020 WL 3082018, at *5 ("No bright lines have been drawn in this context, but [d]istrict courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable."(internal citations and quotation marks omitted)). But those cases analyze agency actions for which there is no "congressionally supplied yardstick" for the agency action at issue. *See, e.g. id.; Skalka v. Kelly*, 246 F. Supp. 3d 147, 153-54 (D.D.C. 2017) ("[T]here is no deadline or timeframe prescribed by Congress for these investigations.").

adjudication of Plaintiff's Form I-526 would "harm other agency activities of equal or greater priority." *Nibber*, 2020 WL 7360215, at *7. The D.C. Circuit has emphasized the importance of considering "competing priorities" in assessing the "reasonableness of an administrative delay"—even "refus[ing] to grant relief when *all the other factors* considered in *TRAC* favored it, where a judicial order putting the petitioner at the head of the queue [would] simply move[ ] all others back one space and produce[ ] no net gain." *Mashpee*, 336 F.3d at 1100 (quoting *In re Barr*, 930 F.2d at 75) (emphasis added); *see also Ghadami*, 2020 WL 1308376, at *9 (finding that "expediting review in [the plaintiff's] case would merely direct government resources from the adjudication of other waiver applications"). Any such order would plainly interfere with the agency's "unique—and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way." *In re Barr*, 930 F.2d at 76; *see also Skalka*, 246 F. Supp. 3d at 153 ("[T]he plaintiff's injury stemmed in part from a lack of resources and that is a problem for the political branches to work out." (internal quotation marks and citation omitted)).

The Government argues that this factor weighs in its favor because Plaintiff seeks a court order directing his visa application to move to the head of the processing queue. Defs.' Mot. at 13. Plaintiff counters that his petition should already be at the front of the line based his "priority date" and investment in a Regional Center. Pl.'s Cross-Mot. & Opp'n at 19. But this argument ignores that a court order directing USCIS to process Plaintiff's application would still put him ahead in the queue of those *similarly situated*. *See, e.g. Palakuru*, 2021 WL 674162, at *5 ("Granting [plaintiff] relief here would advance his petition in front of other similarly situated—with respect to the availability of visas and investment in a regional center—who filed their petitions earlier."). The Court finds that the timeline for adjudicating Plaintiff's petition reflects the Government's competing priorities and resources such that granting Plaintiff's requested relief

would simply move him ahead in the processing queue to the detriment of other similarly situated visa applicants. Accordingly, the fourth *TRAC* factor favors the Government.

#### 4. Third & Fifth *TRAC* Factors

The third and fifth factors are often considered together, and require the Court to consider Plaintiff's interests, health, and welfare. *Ghadami*, 2020 WL 1308376, at *9. Plaintiff alleges that he has been harmed by the delay in adjudicating his I-526 petition because he is "unable to supervise and oversee his investment in the United States or to otherwise plan for the future" and the delay is "preventing Plaintiff from obtaining an immigrant visa." Am. Compl. ¶¶ 102, 104. Although the Court recognizes that Plaintiff certainly has an interest in swift adjudication of his visa petition, "so too do many others facing similar circumstances." *Palakuru*, 2021 WL 674162, at *5. Plaintiff here has not pled plausible allegations of harm to his "health and welfare" present in other cases in which courts have weighed these factors in a plaintiff's favor. *See, e.g., Ghadami*, 2020 WL 1308376, at *9 (weighing third and fifth *TRAC* factors in favor of visa applicant who alleged that he was "irrevocably harmed" by separation from his children and wife due to government's delay in rendering a decision on whether he was entitled to waiver of immigration restrictions in Presidential Proclamation 9645); *Didban*, 435 F. Supp. 3d at 177 (finding plaintiffs' interests in having their waiver application adjudicated were "undeniably significant" because they had "to endure a prolonged and indefinite separation, thereby forcing them to delay beginning their life as a married coupled"). Rather, Plaintiff appears to concede that his harm is purely economic. *See* Pl.'s Cross-Mot. & Opp'n at 21–24. Accordingly, Plaintiff has not alleged that human health and welfare are at stake or that there are other prejudiced interests beyond his interest in having his Form I-526 promptly adjudicated.

### 5. Sixth *TRAC* factor

The sixth *TRAC* factor notes that the "Court need not find any impropriety lurking behind agency lassitude in order to hold the agency action is unreasonably delayed." *Ghadami*, 2020 WL 1308376, at *9. The Court "must determine whether the agency has acted in bad faith in delaying action." *Gona v. U.S. Citizenship & Immigr. Servs.*, 20-cv-3680-RCL, 2021 WL 736810, at *5 (D.D.C. Feb. 25, 2021). Here, Plaintiff contends only that the fact that his visa petition has not been adjudicated—despite his "priority date" being "current"—demonstrates that the Government has not followed a "balanced application of resources" and that its process is "disorderly." Pl.'s Cross-Mot. & Opp'n at 24; Pl.'s Reply at 24. The Court finds that Plaintiff's allegations on this point lack "factual content that allows the court to draw the reasonable inference" of any bad faith or impropriety to sway this factor in Plaintiff's favor. *Iqbal*, 556 U.S. at 678. As *TRAC* directs, however, the lack of plausible allegations of impropriety does not weigh against Plaintiff, and therefore does not alter the Court's analysis. *See Palakuru*, 2021 WL 674162, at *6 (considering the sixth *TRAC* factor "neutral" even though the plaintiff alleged that the government had engaged in "purposeful delay" and "artificially inflate[d] Form I-526 processing times").

\*\*\*

Upon review of all six *TRAC* factors, the Court finds that the Amended Complaint does not state a claim for "unreasonable delay" actionable under the APA. The second factor may weigh in Plaintiff's favor because the Government's time for processing his visa petition has surpassed 180 days. But the remaining factors—the "rule of reason" governing the Government's processing of I-526 petitions, the absence of any justification for expediting the processing of Plaintiff's petition at the expense of other similarly situated petitioners, and the absence of any other harm to health or welfare— considered together, favor the Government and demonstrate that the Amended

16

Complaint does not state a claim under the APA for unreasonable delay. *See Sarlak*, 2020 WL 3082018, at *6 (reaching the same conclusion); *Ghadami*, 2020 WL 1308376, at *9 (same); *Nohria*, 2021 WL 950511, at *6 n.5 (same); *Palakuru*, 2021 WL 674162, at *6 (same).

### B. Mandamus Claims

In addition to his APA claims, Plaintiff seeks writs of mandamus to compel USCIS, DOJ, and FBI officials to adjudicate his Form I-526 and complete the associated background checks. *See* Am. Compl. ¶¶ 79, 100. As with his APA claims, Plaintiff's mandamus claims rest on the government's alleged "unreasonable delay" in processing his visa petition. *Id.* ¶¶ 76, 77, 98.

The standard by which the Court reviews agency "inaction" under the Mandamus Act, 28 U.S.C. § 1361, is the same standard applied to claims under § 706(1) of the APA. *See Skalka*, 246 F. Supp. 3d at 152. In either context, the Court considers whether the agency has "unreasonably delayed the contemplated action," *In re Core Commc'ns, Inc.*, 531 F.3d at 855, by applying the *TRAC* factors. *Skalka*, 246 F. Supp. 3d at 152. Here, the Court has already determined that Amended Complaint fails to state a claim for unreasonable delay under the APA by applying the *TRAC* factors. The same conclusion applies with equal force to Plaintiff's mandamus claims. Because the Complaint fails to state a plausible claim of an "unreasonable delay" under the APA, his claim for mandamus relief "necessarily fails." *Didban*, 435 F. Supp. 3d at 177 (citing *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63–64 (2004)).

## IV.     CONCLUSION

For the foregoing reasons, the Court finds that the Amended Complaint fails to state a claim for unreasonable delay under the APA or Mandamus Act.  Accordingly, the Court shall grant the Government's motion to dismiss and shall dismiss the Amended Complaint without prejudice.

An appropriate order accompanies this Memorandum Opinion.

                                                             /S/
                                                    COLLEEN KOLLAR-KOTELLY
                                                    United States District Judge